O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.A., *a minor by and through Guardian Ad Litem, Willnicka ReneePollarda*, et al., | Case No. CV 20-06447 DDP (JPRx) |
| Plaintiff, | **ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| CITY OF REDONDO BEACH, a municipality, JOHN ANDERSON, | [Dkt. 46] |
| Defendants. | |

Presently before the court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"). Having considered the submissions of the parties and heard oral argument, the court grants the motion in part, denies the motion in part, and adopts the following Order.

**II. Background**

On July 26, 2018, Sergio Richard Acosta, Jr. ("Decedent") died after a police officer, Defendant John Anderson, shot him in front of a residence in Redondo Beach, California. (SAC ¶ 9.) News reports uniformly suggested that Decedent had been chasing someone while armed, and had possibly fired shots. (SAC ¶ 12.) Although

paramedics transported Decedent to the hospital, he died at the scene of the shooting. (SAC ¶¶ 9, 32.)

Plaintiffs requested information regarding the circumstances surrounding Decedent's death, such as audio of 911 calls, from the City of Redondo Beach ("the City") beginning in September 2018. (SAC ¶ 14-15.) In December 2018 and again in August 2019, a Homicide Bureau detective told Plaintiffs' investigator that the City would not release any information until the completion of an ongoing investigation. (SAC ¶¶ 16-18.) In March 2020, the same detective informed Plaintiffs' investigator that the City's investigation was complete, and was under review by the District Attorney's office. (SAC ¶ 19.) Plaintiffs filed this action in July 2020, while the City's investigation was still under review.

In August 2020, the City provided Plaintiffs with a memorandum that summarized the District Attorney's Office of Justice System Integrity Division ("JSID")'s findings. (SAC ¶ 22.) The JSID memorandum stated that when Officer Anderson arrived at the scene, he saw that Decedent was holding what Anderson believed to be a semi-automatic gun under his left armpit. (SAC ¶ 28.) It also noted that Anderson identified himself as a police officer and yelled at Decedent to drop his gun three times. (SAC ¶ 29.) According to Anderson, Decedent then moved his right hand across his body. (SAC ¶ 30.) Fearing Decedent might be reaching for the weapon in his armpit, Anderson shot Decedent six times through the driver's side window of Anderson's vehicle. (Id.)

Plaintiffs allege that the JSID memorandum includes witness accounts that differ from Defendant Anderson's account of the shooting. (SAC ¶ 34.) One witness, for example, did not hear

2

Anderson give any warnings, and stated that Decedent had his hands up, with a gun in his hand, when Anderson shot him.[1] (Id.) Plaintiffs further allege that of the six Redondo Beach Police Department-involved shootings in the last six years, two resulted in fatalities and five were deemed lawful by the JSID. (SAC ¶ 36.)

Decedents' parents, Plaintiff Sergio Acosta and Delmy Acosta Arely, and his minor child, Plaintiff I.A., brought the instant suit against the City, Defendant Anderson, and several Doe defendants. Plaintiffs allege constitutional violations, including excessive force, denial of medical care, and interference with familial relationships, as well as several causes of action under state law. Defendants now move to dismiss Plaintiffs' Second Amended Complaint.

**II.  Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a

---

[1] The weapon, recovered at the scene, was an airsoft pistol. (SAC ¶ 32.)

3

statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

A. Exhaustion of state remedies

The SAC's fifth through ninth causes of action assert various claims under California state law, as did Plaintiffs' First Amended Complaint ("FAC"). Under California law, a plaintiff may not bring a tort claim against a public entity or employee without first complying with California's Tort Claims Act ("CTCA"). Dragasits v. Rucker, No. 18-CV-0512-WQH-AGS, 2020 WL 264519, at *3 (S.D. Cal. Jan. 17, 2020); Mahach-Watkins v. Depee, No. C 05-1143 SI, 2005 WL 1656887, at *4 (N.D. Cal. July 11, 2005). Among CTCA's requirements is that plaintiffs present a claim to public authorities within six months after the accrual of the cause of action. Cal. Gov. Code § 911.2(a); Dragasits, 2020 WL 264519, at *

4

3. Defendants argue, as they did in seeking to dismiss portions of the FAC, that because Plaintiffs do not allege that they timely presented any tort claim, the state law causes of action must be dismissed.

Plaintiffs again respond, as they did in prior proceedings, that Defendants are estopped from asserting any exhaustion argument because Defendants refused to disclose any information regarding the incident until after the expiration of the state claims period as "part of a deliberate effort to prevent Plaintiffs from bringing timely administrative claims." (Opposition at 25:5-6.) "It is well settled that a public entity may be estopped from asserting the limitations of the claims statute where its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act." City of Stockton v. Superior Court, 42 Cal. 4th 730, 744 (2007) (internal quotation marks omitted). "Estoppel most commonly results from misleading statements about the need for or advisability of a claim; actual fraud or the intent to mislead is not essential." Id. (internal quotation marks omitted). A plaintiff seeking to estop a public entity bears the burden of showing by a preponderance of the evidence that "(1) the public entity was apprised of the facts, (2) it intended its conduct to be acted upon, (3) plaintiff was ignorant of the true state of facts, and (4) relied upon the conduct to his detriment." Christopher P. v. Mojave Unified Sch. Dist., 19 Cal. App. 4th 165, 170 (1993).

Here, although Plaintiffs correctly state that fraud or intent to mislead is not a necessary element of estoppel, Plaintiffs once again fail to allege any misrepresentation or affirmative act that

5

dissuaded Plaintiffs from filing a tort claim.  See J.P. v. Carlsbad Unified Sch. Dist., 232 Cal. App. 4th 323, 334 (2014). J.P. does not aid Plaintiffs' argument.  There, arguably well-meaning school administrators "presented themselves as helpful authority figures" and made "affirmative statements to [a] minors' parents, directing them to stay silent . . . ." Id.  Here, there is no analogous affirmative act alleged, whether well-intentioned or otherwise.

In the alternative, Plaintiffs once again assert that their causes of action did not accrue until August 24, 2020, when the Integrity Division released its report to Plaintiffs.  (Opposition at 11-12.) The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005).  "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." Id. (internal quotation marks omitted). "[P]laintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." Id. at 807-08 (internal quotation marks and alterations omitted).  "In order to raise the issue of belated discovery, the plaintiff must state when the discovery was made, the circumstances behind the discovery, and plead facts showing that the failure to discover was reasonable, justifiable and not the result of a failure to investigate or act." Bastian v. Cty. of San Luis Obispo, 199 Cal. App. 3d 520, 527 (1988).  Although Plaintiffs suggest that questions regarding the reasonableness of

their failure to discover their state law causes of action involve questions of fact that cannot be resolved at this stage, Plaintiffs are incorrect.  Even at this stage, Plaintiffs must "plead facts showing that the failure to discover was reasonable, justifiable, and not the result of a failure to investigate or act."  Id. (emphasis added).  Although the SAC alleges that Plaintiffs hired an investigator, there is no allegation that Plaintiffs or their investigator made any effort to determine the facts of the incident at issue, other than reviewing news articles and asking government officials to release the details of ongoing investigations.  Even as pleaded, such an "investigation" was not reasonable, and the delayed discovery rule does not apply.[2]

The court notes further that CTCA's requirements are not onerous.  A written claim need only provide, in additional to basic contact and demand information, "the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim . . .[,] [a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim[, and] [t]he name or names of the public employee or employees causing the injury . . . ."  Cal. Gov. Code § 910.  California case law involving claims brought under the CTCA is also "fairly forgiving of plaintiffs."  Mueller v. Cruz, No.

---

[2] Ovando v. City of Los Angeles, 92 F. Supp. 2d 1011, 1023 (C.D. Cal. 2000) is not to the contrary.  There, the court applied the delayed discovery rule where the plaintiff alleged an affirmative cover-up on the part of police officer defendants as part of the Rampart scandal.  Ovando, 92 F. Supp. 2d at 1014, 1023. As the court recognized, the rule exists "to protect those blamelessly ignorant of their cause of action . . . [who lack] the opportunity to obtain such knowledge from sources available upon reasonable investigation."  Id. at 1023 (citing Bastian, 199 Cal. App. 3d at 527 (internal quotation marks and citation omitted)).

7

SACV1301274CJCJCGX, 2015 WL 9455565, at *6 (C.D. Cal. Dec. 23, 2015). Because the purpose of the statute is simply to provide public entities with sufficient notice to investigate, and potentially settle, claims, courts will not require pleading-level details or specificity, or apply CTCA to "snare the unwary where its purpose has been satisfied." Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 446 (2004) (internal quotation marks and citation omitted). Indeed, subsequently-filed complaints need not be limited to facts or theories recited in a CTCA notice, "so long as the complaint is not based on an entirely different set of facts." Id. at 447 (internal quotation marks and citation omitted); Via v. City of Fairfield, 833 F. Supp. 2d 1189, 1197 (E.D. Cal. 2011).

Relatively bare-bones CTCA notices have often been found sufficient to satisfy the exhaustion requirement. In Via, for example, the court denied a motion to dismiss for failure to exhaust state court claims related to the use of excessive force by police where the plaintiff's administrative notice stated only, "Injury caused by Officer A. Williams and other officers of the Fairfield Police Department while being arrested," and made reference to "being tased."[3] Via, 833 F. Supp. 2d at 1197-98. Similarly, the court in Cole v. Sunnyvale denied a motion to dismiss a claim for intentional infliction of emotional distress where the plaintiff's claim described "violation of constitutional rights by Sunnyvale Department of Public Safety," and listed the

---

[3] The court did, however, find this notice insufficient to exhaust claims based upon lack of probable cause and allegedly false police reports. Via, 833 F. Supp. 2d at 1198.

8

relevant injury as "1) illegal search, 2) illegal seizure, [and] 3) detention . . . without probable cause." Cole, No. C-08-05017RMW, 2009 WL 2157535, at *8 (N.D. Cal. July 20, 2009). And in Moore v. City of Vallejo, the court found state law civil rights, negligence, and assault and battery claims sufficiently exhausted by a claim stating only, "The police department shot our son while he was unarmed causing his death."[4] Moore, 73 F. Supp. 3d 1253, 1256 (E.D. Cal. 2014). Here, Plaintiffs could have, but did not, file a claim with a similar level of specificity.

Because Plaintiffs did not comply with CTCA's relatively modest notice requirements, their unexhausted tort claims are barred. Plaintiffs' fifth through ninth causes of action are therefore dismissed, with prejudice.

    B. Constitutional claims

        1. Excessive force and interference with familial relationship

In seeking to dismiss certain of Plaintiffs' constitutional claims, Defendants raise a brief argument that is rooted in the mistaken assumption that Defendant Anderson's account, as related in the JSID report memorandum, is accurate. These arguments are not well-taken.

Defendants argue that "Officer Anderson's use of force was objectively reasonable . . . [because] decedent did not listen to commands to drop the gun but rather moved his right hand across his

---

[4] Although Plaintiffs here could not in good faith have asserted that Decedent was unarmed, the fact that he was carrying an airsoft pistol is not dispositive. See Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997) ("Law enforcement officials may not kill suspects . . . simply because they are armed.").

9

body as if he was reaching for the gun in his left armpit."[5] (Motion at 8: 14-15, 18-19.) Needless to say, the SAC alleges no such thing. Any reference to these "facts" in the SAC makes clear that the such facts are nothing more than the JSID memorandum's characterization of Anderson's side of the story. (SAC ¶¶ 29-31.)

Defendants go on to suggest that, even if Decedent's hands were raised when Anderson shot him, Anderson's use of force was objectively reasonable as a matter of law because Decedent was holding a gun. Defendants are mistaken. Objective reasonableness must take into account the totality of the circumstances. Byrd v. Phoenix Police Dep't, 885 F.3d 639, 642 (9th Cir. 2018). Relevant facts include, but are not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue. Graham v. Connor, 490 U.S. 386, 396(1989). The mere fact that a suspect is armed does not end the reasonableness inquiry. Glenn v. Washington Cty., 673 F.3d 864, 872 (9th Cir. 2011); see also Hayes v. County of San Diego, 736 F.3d 1223, 1233 (9th Cir. 2013) ("[T]he mere fact that a suspect possesses a weapon does not justify deadly force.") (alteration in original); Estate of Lopez v. Gelhaus, 871

---

[5] Defendants raise essentially the same argument with respect to Plaintiff's familial relationship claim, asserting that Anderson's conduct does not shock the conscience because "Decedent failed to listed to Officer Anderson's commands to drop the gun. When decedent made a move as if reaching for his weapon, Officer Anderson shot him." (Mot. at 10:22-24.) Furthermore, objective reasonableness may be relevant to, but is not necessarily coterminous with, the "shocks the conscience" standard applicable to a Fourteenth Amendment substantive due process claim. See Brittain v. Hansen, 451 F.3d 982, 991 n.1 (9th Cir. 2006) (citing Moreland v. Las Vegas Metropolitan Police Dep't, 159 F.3d 365, 371 n.4 (9th Cir. 1998).

10

F.3d 998, 1017 (9th Cir. 2017) (denying summary judgment where decedent was holding toy AK-47 rifle).

### 2. Denial of Medical Care

Police officers must "seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital." Maddox v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986) (citing Revere v. Massachusetts General Hospital, 463 U.S. 239, 245 (1983)); see also Tatum v. City & Cty. of San Francisco, 441 F.3d 1090, 1099 (9th Cir. 2006). The SAC alleges, without any temporal frame of reference, that Decedent was transported to the hospital. (SAC ¶ 32.) The SAC later alleges, upon information and belief and without elaboration, that Defendant Anderson "did not timely summon medical care or permit medical personnel to treat" Decedent. (SAC ¶ 38.) Without any factual allegations about the amount of time Anderson took to summon medical care or how Anderson interfered with medical personnel, however, Plaintiffs' claim that Anderson did not summon care in a "timely" manner is too conclusory to support a claim for denial of medical care. Although Plaintiffs seek to liken the circumstances here to those in Lindsey v. City of Pasadena, No. CV1608602SJORAOX, 2017 WL 5749681 (C.D. Cal. Feb. 2, 2017), the allegations there were materially different from those in the SAC here. In Lindsey, the plaintiffs specifically alleged that police officers "delayed administering first aid and CPR," and that firefighters "acted without urgency, failed to administer lifesaving measures, and did not transport [the decedent] to a local trauma center." Lindsey, 2017 WL 5749681 at * 1. There are

11

no analogous allegations here. Absent any factual allegations to support the assertion that Anderson did not "timely" summon medical care, Plaintiffs' denial of medical care claim must be dismissed.

C. <u>Monell</u> claims

Plaintiffs' Fourth Cause of Action asserts a <u>Monell</u> claim on unconstitutional practice or custom, failure to train, and ratification theories. <u>See</u> <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978). With respect to the former, Plaintiffs allege a custom or practice of tolerating and covering up the use of excessive force by failing to discipline unlawful police activity, allowing officers to file false reports, fail to activate body cameras, coach witnesses, and obstruct official investigations, deterring claimants from filing administrative claims by delaying investigations, tolerating a "code of silence" among officers, and failing to train. (SAC ¶ 66.)

Although this alleged policy or custom is quite detailed, it does not appear to bear any relation to the facts alleged in the SAC. The SAC, for example, makes no mention whatsoever of false police reports, witness coaching, obstruction of official investigations, active discouragement of administrative claims, or a "code of silence," either in this case or in any other incident involving the City or its police department.[6] Indeed, the SAC

---

[6] Although the SAC does allege that Defendant Anderson failed to activate his body camera prior to shooting Decedent, "[a]llegations of random acts or single instances of misconduct are insufficient to establish a <u>Monell</u> claim." <u>Beverly v. Orange Cty. Sheriff</u>, No. SACV20797JGBPJW, 2020 WL 5834282, at *2 (C.D. Cal. Aug. 3, 2020) (citing <u>Navarro v. Block</u>, 72 F.3d 712, 714 (9th Cir. 1996)); <u>See also</u> <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996).

12

itself alleges that five of the six officer-involved shootings in the past six years have been found to be lawful, without any allegation that, let alone how, those findings are in any way suspect.

Plaintiffs' assertion that the Monell allegations here are similar to those found sufficient in Rozier v. City of El Cajon, No. 17-CV-00347-BAS-NLS, 2017 WL 3721732, at *1 (S.D. Cal. Aug. 28, 2017) is misplaced. In that case, officers allegedly shot and killed an unarmed, mentally ill man who posed no danger to anyone and had not committed any serious offense. Rozier, 2017 WL 3721732 at *1. The plaintiffs' Monell allegations, which centered on a failure to train theory, specified six ways in which the shooting officer's training was deficient, including lack of training as to how to approach mentally ill people, how to issue clear warnings, how to use cover and illumination, and how to fire in controlled bursts. Id. at 3. Furthermore, a plaintiff can generally only succeed on a failure to train theory by showing a pattern of violations.[7] Connick v. Thompson, 563 U.S. 51, 64, 70 (2011); see

---

[7] The Supreme Court has recognized that the harmful consequences of some failures to train are so "patently obvious" that proof of a pattern of violations is not required. Connick, 563 U.S. at 64. In such cases, inadequate training is so likely to result in the violation of constitutional rights "that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989). Such would be the case if, for example, a city issued firearms to police without ever training them on constitutional limitations on the use of force. See Connick, 563 U.S. at 63 (discussing City of Canton, 489 U.S. at 390 n.10.). The Ninth Circuit, and courts within the circuit, have applied this approach. See, e.g., Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 796 (9th Cir. 2016) (failure to train social workers on need for exigent circumstances or a warrant to justify separating children from families); Williams v. Cty. of Alameda, 26 F. Supp. 3d 925, 948 (N.D. Cal. 2014) (discussing "patently
(continued...)

13

also Dillman v. Tuolumne Cty., No. 1:13-CV-00404 LJO, 2013 WL 1907379, at *14 (E.D. Cal. May 7, 2013). Moreover, "the identified deficiency in the training program must be closely related to the ultimate injury." City of Canton, Ohio v. Harris, 489 U.S. 378, 379 (1989). The allegations here are nowhere as detailed as those in Rozier and, even if they were, would not bear the same relationship to the facts of the shooting at issue.

With respect to ratification, "it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992). Rather, there must be "evidence of a conscious, affirmative choice." Id. "The Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification. . . . The law does not say that every failure to discipline an officer who has shot someone is evidence of a 'whitewash' policy or some other policy of 'sham' investigations." Kanae v. Hodson, 294 F. Supp. 2d 1179, 1189, 1191 (D. Haw. 2003)(citing Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991)); See also Herd v. County of San Bernardino, 311 F.Supp.3d 1157, 1169 (C.D. Cal. 2018); Cole v. Officers of City of Emeryville Police Dept., 387 F.Supp.2d 1084, 1101 (N.D. Cal. 2005);

---

[7](...continued) obvious" consequences of alleged training regimen that led officers to believe they had "'unfettered discretion' to enter a private residence [without a warrant], search it, arrest its occupants, and arbitrarily determine the amount of force to be used . . . ."). Here, however, Plaintiffs do not contend that Defendant Anderson's failure to activate his body camera, or any training related to that failure, meets the "patently obvious" standard. This Court takes no position on the question whether, under the appropriate circumstances, body camera-related issues could meet such a standard.

14

Tacci v. City of Morgan Hill, No. C-11-04684, 2012 WL 195054, at *8 (N.D. Cal. Jan. 23, 2012).  Here, there is no allegation that any failure to discipline Anderson was the product of some affirmative choice to approve of an excessive use of force, or the result of a sham investigation that might suggest such a choice.

Accordingly, Plaintiffs' Monell claim must be dismissed.

**IV. Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED, in part, and DENIED, in part.  Plaintiffs' state law claims are DISMISSED with prejudice.  Plaintiffs' Monell claims are DISMISSED, with leave to amend.  Defendants' motion is denied with respect to Plaintiffs' excessive force and interference with familial relations claims.  Any amended complaint shall be filed within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated: July 30, 2021

DEAN D. PREGERSON
United States District Judge

15